# Richmond

ROOSEVELT LUNSFORD V. COMMONWEALTH OF VIRGINIA.

December 7, 1942.

Record No. 2582.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Archer L. Jones*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Carrington Thompson, Special Assistant*, for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On the afternoon of Saturday, August 23, 1941, Elbert Bailey, deputy sheriff for Surry county, accompanied by E. D. Cox and a Mr. Clark, on information, went to look for a still believed to be making whiskey and unlicensed.

The search was along an arterial highway leading from Surry courthouse in a westerly direction past Spring Grove Church. They did find such a still about one-half mile north of that road, and near it were stacked twenty-three cases of unstamped whiskey.

To the end that they might arrest the guilty party, they sat around in the woods until about four o'clock Sunday morning. Then they went home for breakfast, came back later, and again went home for dinner, after which they returned with the intention of destroying the still itself. Upon their return they found that the twenty-three cases of whiskey had been removed; as a matter of fact, they were scattered in the woods. At that time they heard talking down by the still. Two of them went into the woods that they might arrest the men then there. Bailey stayed by the path leading from the still and in ten or fifteen minutes saw a man coming up with a case of whiskey on his shoulder. Bailey told him not to run. When this man, who was Lunsford, was first seen he was about 60 yards from the still, and when halted he was about 100. About ten minutes after Lunsford was halted Cox saw two men running away. They got away and are still away.

To restate the Commonwealth's case, these searchers located this still; they saw Lunsford coming up a path from it with a case of whiskey on his shoulder, and they saw two other men running away who have never been caught.

Lunsford, who was arrested, was admitted to bail and was afterwards indicted. The indictment charges that he "unlawfully and feloniously did manufacture distilled alcoholic beverages without being licensed." At his trial, by consent, a jury was waived, and he was sentenced by the Judge to six months' confinement in jail and assessed with a fine of $250.

The Commonwealth's case rests upon facts stated.

It will be noted that Lunsford was not charged with the unlawful transportation of whiskey but with making it.

Testifying on his own behalf, Lunsford said that when arrested he was hauling pulpwood to the Hummel-Ross fiber corporation at Hopewell. This hauling was done in a truck bought from Cox and for which he paid $1,000. The wood itself stood on a tract of land which extended to within a quarter of a mile of this raided still. He paid the landowner $2.00 a cord for the timber on the stump; he paid his cutters $1.25 a cord; he himself was paid by the paper company at first $6.00 and later $7.00. When this pulpwood was delivered he was given a ticket showing the amount delivered and the amount due, and it was on this basis that he settled with his men. There was no delivery on the week ending Saturday, the 23rd, and this because the truck had broken down. Since there was no delivery he could not know what was due to his men. They, of course, wanted to be paid. He told them, and particularly, Clinton Scott, that he would go through the woods on Sunday next and make up as best as he could an estimate of what was due them. In this he is amply sustained by Clinton Scott's testimony. He said that he knew nothing about the still, had never seen it, had no interest in it; that coming through the woods he came upon a case of whiskey; no owner being about, he proceeded to confiscate this treasure-trove and started home with it. This was doubtless one of the original twenty-three cases of whiskey, but Lunsford said that it was the only one he ever saw.

The path along which Lunsford came was muddy as it left the still but not where he was first seen. His shoes were not muddy.

Cox was asked if Lunsford made any statement when arrested and answered: "The only thing I recall, he said he hadn't been there very long." On cross-examination Cox was asked:

"Q. Do you know with reference to the statement that he made that he hadn't been there long whether he was referring to at the still or in those woods, or do you know?

"A. I don't know."

This statement is of course equivocal; it might have meant that he had not been at the still very long and it might have meant that he had not been long in the woods. Taken in conjunction with his other testimony, the latter would seem to be the more probable.

The reason which he gives for being in the woods on that occasion is a reasonable one, and if it be said that he is an interested witness, there is nothing in the record to discredit him. No one has contradicted him.

Scott is not interested, and he tells us that Lunsford had promised him to go into the woods on that Sunday afternoon and the reason for his going.

No one ever saw Lunsford at the still. His account of all that he did is not only not inherently improbable but is reasonable and is sustained by the testimony of a disinterested witness. As we have seen, he is charged with making whiskey and not with transporting it. His guilt has not been proven. *Jennings* v. *Commonwealth*, 155 Va. 1075, 156 S. E. 394.

For reasons stated, the judgment of the trial court should be reversed and it is so ordered.

*Reversed.*