## Richmond

## KENNETH MICHAEL YATES

v.

## COMMONWEALTH OF VIRGINIA

No. 0048-84

Decided April 7, 1987

COUNSEL

Ned M. Mikula (Rudy, Gill, Keown, Dicks, Evans, & Mikula, on brief), for appellant.

W. Mark Dunn, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.** — Michael Yates appeals from convictions of robbery and use of a firearm in the commission of a felony. He contends that the evidence was insufficient to convict him and that the trial court applied an erroneous standard of proof to his alibi defense. We find the evidence sufficient to support the convictions and affirm.[1]

On the morning of May 14, 1982, Cynthia Mallory, the assistant manager of a store in the Cloverleaf Mall, was carrying the previous day's receipts of $264 to a bank located across the Mall's parking lot when a white van stopped in front of her. As she went around the back of the van, a man with a short-barrelled handgun got out of the van and grabbed the blue bank bag she was carrying. The man wore over his head material which appeared to be a black football jersey. Mallory turned around and the man said, "You better not or I will kill you." The man got back into the van, and the van left on the Midlothian Turnpike toward South Richmond.

Mallory testified that she saw an unmasked, relatively young man in the van and that she did not believe the robber was the operator of the van. Mallory could not identify either Yates or Charles Alberti, the Commonwealth's key witness.

Prior to Yates' trial, Alberti pled guilty to the robbery and received a suspended sentence. Alberti had also participated in many other robberies, and was serving a one hundred ten year sentence in connection with another offense. Testifying against

---

[1] The record reveals that Yates made no objection to the trial court's comments regarding the standard of proof for an alibi defense. In the absence of such an objection, we will only address an issue on appeal where we deem it to be necessary to attain the ends of justice. Rule 5A:18. We find that there is no such necessity here and accordingly we will not address this issue.

Yates pursuant to a plea agreement, Alberti said that he had known Yates for several years; however, he did not know Yates' last name but knew him only as "Mike."

Alberti testified that he drove the stolen, white van which was used in the robbery. He stated that two other persons, Billy Morgan and another man whose name he could not recall, were in the van when the robbery occurred. Alberti further testified that Mallory walked up to where the van was parked and that Billy Morgan, who was wearing a lady's stocking over his head, got out of the van and grabbed a blue money bag from Mallory.

Alberti also testified that Yates was not in the van during the robbery, but was waiting in his car in the parking lot of the K-Mart store located across the highway from the Mall. According to Alberti, after the van left the Mall parking lot, it cut off "almost halfway" to the place where "we were supposed to get in his [Yates'] car and we left it right there and ran to his car." Alberti testified that Yates drove the robbers away and shared equally in the money taken from Mallory. Alberti also testified that he and Yates had committed similar robberies in which Yates had been the getaway driver.

Investigator William Showalter testified that after the robbery the van was discovered in North Richmond, several miles from the scene of the robbery. Alberti was subsequently arrested in 1983 after committing a similar "bank-bag snatch" robbery and was connected with the Mallory robbery through a latent print found on the van's vent window. Alberti gave a statement to Showalter which implicated Yates in the Mallory robbery and placed Yates in the van when Mallory was robbed. However, Investigator Showalter said that Alberti informed him "before we came to court" that he was mistaken about Yates' presence in the van during the Mallory robbery, that a third person whose name he was unsure of had been in the van, and that Yates had been sitting in his car in the K-Mart lot across the city line.

Alberti's testimony is consistent in some but not all aspects with Mallory's testimony regarding the events in the parking lot of the Mall.[2] Yates, by Alberti's own testimony, was not present in the

---

[2] Alberti testified that the van was parked when Mallory walked by; however, Mallory testified that the van stopped in front of her as she was crossing the crosswalk. Alberti

van but was waiting in the K-Mart lot. Mallory did not see Yates. Except for the testimony of Alberti, there was neither physical evidence nor testimony that tended to connect Yates with the crime.

Prior to trial, Investigator Showalter confronted Yates with Alberti's statement. Yates denied any participation in the robbery. He presented an alibi defense at trial which was inconclusive as to his whereabouts on the day of the robbery.

Yates argues that Alberti's testimony, standing alone, was insufficient to sustain the convictions. We disagree. "It is well settled in Virginia that an accused may be convicted upon the uncorroborated testimony of an accomplice." *Johnson v. Commonwealth*, 224 Va. 525, 527, 298 S.E.2d 99, 101 (1982). The dispositive issue in this case is, therefore, whether Alberti's testimony was unworthy of belief as a matter of law.[3]

In reviewing the evidence, we are mindful that Yates was convicted in a bench trial. The trial judge, as the finder of fact, had both the opportunity and the responsibility to observe Alberti testify and evaluate his credibility as a witness. His assessment of Alberti's credibility is entitled to the same weight as a jury's verdict. This principle was explained by the Supreme Court in *Lane v. Commonwealth*, 184 Va. 603, 35 S.E.2d 749 (1945):

> [T]he finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed.

*Id.* at 611, 35 S.E.2d at 752.

Alberti admitted that he and two others robbed Cynthia Mallory on May 14, 1982. He testified that Yates was waiting for

---

testified that Morgan, the gunman, wore a lady's stocking for a mask; however, Mallory said the assailant wore a black hood which resembled a football jersey or knit shirt. Alberti could not recall whether the victim wore a dress or pants; Mallory said she wore a red tee shirt and black shorts.

[3] We reject the Commonwealth's assertion that Alberti's testimony was corroborated as to material facts which tended to connect Yates with the crime. *See Dillard v. Commonwealth,* 216 Va. 820, 823-24, 224 S.E.2d 137, 140 (1976). Our view of the evidence is that Alberti's testimony in this regard was uncorroborated in any meaningful sense.

them in his own car to drive them all away from the scene of the robbery. Alberti further testified that Yates shared in the proceeds of the robbery. While certain details of Alberti's testimony regarding the robbery were not identical to the victim's testimony, these inconsistencies were not so significant as to render Alberti's testimony inherently incredible.

Yates relies on the fact that Alberti initially told Showalter in 1983 that Yates was in the van at the time of the robbery, and then changed his account before trial to state that Yates was waiting at K-Mart to pick up the robbers. We do not believe that this change in Alberti's account of events established that he was an inherently untruthful or unreliable witness. Both his 1983 statements to Showalter and his trial testimony were within the province of the trial court to evaluate. The court was entitled to accept Alberti's testimony at trial in which he consistently maintained that Yates was not in the van, but in the K-mart parking lot.

Yates further relies on the fact that the van was found in a different part of town than where Alberti said the robbers had left it after it broke down. While this fact does nothing to corroborate Alberti's testimony, it does not directly contradict it. There is nothing in the record to establish when the van was found or in what condition it was in, *i.e.*, operable or inoperable. Thus, the fact that the van was found sometime after the robbery in a location different than where Alberti said he had left it was only a circumstance for the court to consider in evaluating the totality of Alberti's testimony.

█ Finally, Yates argues that Alberti was not a credible witness because he was testifying pursuant to a plea agreement involving the present crime, and because he admitted having other felony convictions. It is true that "the source of accomplice testimony is tainted with the temptation to exculpate oneself by laying the crime upon another." *Dillard v. Commonwealth*, 216 Va. 820, 821, 224 S.E.2d 137, 139 (1976). However, the trial judge, as the trier of fact, was fully aware of this evidentiary principle and was further aware of Alberti's plea agreement and felony record. After reviewing the record in this case, we cannot say that the court was plainly wrong in concluding that Alberti's testimony was worthy of belief.

In summary, we find that the testimony of Charles Alberti was not inherently incredible and was sufficient to support Yates' convictions of robbery and use of a firearm in the commission of a felony.

*Affirmed.*

Cole, J., concurred.

Benton, J., dissenting.

The majority defines the crucial issue in this case as "whether Alberti's testimony was unworthy of belief as a matter of law." In framing the issue this way, however, the majority misplaces its focus. As is the case in all appeals reviewing the sufficiency of the evidence adduced at trial, the dispositive issue is whether the Commonwealth succeeded in establishing the guilt of the accused beyond a reasonable doubt. *See, e.g., Holland v. Commonwealth,* 190 Va. 32, 39, 55 S.E.2d 437, 441 (1949). "The evidence must be such that it excludes every reasonable hypothesis of innocence." *Fowlkes v. Commonwealth,* 194 Va. 676, 679, 74 S.E.2d 683, 684 (1953) (quoting *Smith v. Commonwealth,* 192 Va. 453, 461, 65 S.E.2d 528, 533 (1951) (citations omitted)).

It is true that in Virginia "an accused may be convicted upon the uncorroborated testimony of an accomplice." *Johnson v. Commonwealth,* 224 Va. 525, 527, 298 S.E.2d 99, 101 (1982). However, this does not alter the fact that the evidence must be sufficient to prove "the guilt of the accused beyond a reasonable doubt." *Ward v. Commonwealth,* 219 Va. 921, 923, 252 S.E.2d 349, 350 (1979). When assessing the weight of the evidence, the trier of fact should weigh with great care and caution the uncorroborated testimony of an accomplice because "the source of accomplice testimony is tainted with the temptation to exculpate oneself by laying the crime upon another." *Dillard v. Commonwealth,* 216 Va. 820, 821, 224 S.E.2d 137, 139 (1976) (citation omitted). The testimony of an accomplice will be considered corroborated only when it is confirmed "in material facts" which tend to establish guilt of the accused. *Id.* at 823, 224 S.E.2d at 140.

There is not a scintilla of evidence to corroborate Alberti's allegation that Yates was waiting to drive the getaway vehicle. By Alberti's own testimony, Yates was not present in the van but was

waiting in the K-Mart lot. Mallory did not see Yates, and could not have seen him if Alberti is to be believed. Except for the testimony of Alberti, there was neither physical evidence nor testimony that tended to connect Yates with the crime. Furthermore, the conflict between Alberti's testimony (that the van became disabled and was abandoned in the few blocks between the shopping mall parking lot and the K-Mart lot) and Showalter's testimony (that the van was discovered abandoned after the robbery in the northside of Richmond, several miles from the robbery scene), raises the probable and reasonable inference that Alberti's recollection of the mode of escape on May 14, 1982, and thus, the link to Yates, was faulty.

In order to find Yates guilty from the proven facts, the fact finder either had to disregard Showalter's testimony or infer that someone moved the disabled, stolen van from the roadside between the shopping mall and K-Mart in Chesterfield County to the northside of Richmond. Showalter was a witness for the Commonwealth; his testimony with respect to the physical evidence was positive, affirmative, and not inherently improbable. Certainly the trier of fact was not entitled to disregard any part of his testimony regarding the location of the abandoned van. *See Chesson v. Commonwealth*, 216 Va. 827, 832, 223 S.E.2d 923, 926, *cert. denied,* 429 U.S. 927 (1976); *Boone v. Commonwealth*, 212 Va. 686, 688, 187 S.E.2d 178, 180 (1972).

Inferences may be made from proven circumstances only to the extent that those inferences are reasonable and justified. *Webb v. Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). Moreover, "[w]here inferences are relied upon to establish guilt, they must point to guilt so clearly that any other conclusion would be inconsistent therewith." *Dotson v. Commonwealth*, 171 Va. 514, 518, 199 S.E. 471, 473 (1938) (citation omitted). It strains logic and reason to conclude that the disabled van, which Alberti testified was abandoned by him and his confederates within a block or two of the robbery scene as they ran to the waiting car, would reappear after the robbery miles away from the scene. This evidence, however, is not inconsistent with the hypothesis that Alberti was unable to reconstruct accurately the events as they occurred on May 14, 1982. The location of the van, as established through Showalter's testimony, raises the justifiable and reasonable inference that the perpetrators of the robbery drove the van to

the northside of Richmond without using another car at K-Mart to effect their getaway. The only evidence which links Yates to the Mallory robbery is Alberti's testimony that he waited for the participants in an escape vehicle at K-Mart; thus, the Commonwealth's evidence, showing that the vehicle was found abandoned after the robbery several miles away in the northside of Richmond, contradicts Alberti's testimony as to Yates' presence. His presence cannot rationally be inferred in view of proof that contradicts the premise upon which the Commonwealth relied.

Where, as here, the proved facts are equally susceptible of two interpretations, one of which is consistent with the innocence of the appellant, the trier of fact is not at liberty to adopt arbitrarily the interpretation which incriminates appellant. *Williams v. Commonwealth*, 193 Va. 764, 772, 71 S.E.2d 73, 77 (1952); *Mansfield v. Commonwealth*, 146 Va. 279, 282, 135 S.E. 700, 701 (1926). Alberti, by his own admission, participated in many similar robberies. Alberti testified that Yates participated in several similar robberies with him involving the snatching of bank bags. Yates denied Alberti's allegations. Investigator Showalter testified that in 1983, when Alberti implicated Yates in several robberies, Alberti "was somewhat sketchy on the very fine details." Alberti told Showalter in 1983 that Yates was in the van along with Billy Morgan and Alberti when Mallory was robbed; however, immediately prior to the trial of this case in 1984 Alberti told Showalter, "after he thought about it . . . there was a third party in the van, he was unsure at that time of the individual's name and . . . [Yates] was sitting across in the K-Mart lot . . . waiting to pick them up." The evidence, thus, points to a strong probability that Alberti confused circumstances of various robberies.

When the evidence presented at trial is viewed in the light most favorable to the Commonwealth, granting to it all reasonable inferences derived therefrom, *Higgenbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), there is a reasonable doubt as to Yates' participation in the robbery of Mallory. For this reason, I would reverse the conviction.