Tuesday                    10th

October, 2006.


Malcolm Parker,                                                                              Appellant,

 against                    Record No. 1592-04-4
                           Circuit Court No. CR105025

Commonwealth of Virginia,                                                      Appellee.


Upon Rehearing En Banc

Before Chief Judge Felton, Judges Benton, Elder, Humphreys, Clements,
Kelsey, McClanahan, Haley, Petty and Beales

James G. Connell, III (Devine & Connell, P.L.C., on brief), for
appellant.

Leah A. Darron, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General; Susan L. Parrish, Assistant Attorney
General, on brief), for appellee.


By memorandum opinion dated January 10, 2006, a panel of this Court reversed the judgment of

the trial court.  We stayed the mandate of that decision and granted rehearing *en banc*.  Upon

reconsideration, the January 10, 2006, mandate of this Court is vacated, and we affirm the trial court for

the reasons stated by the dissent in Parker v. Commonwealth, No. 1592-04-4, slip op. 6-8 (Va. Ct. App.

Jan. 10, 2006), adopting the dissenting opinion as our own.

Judges Benton, Elder, and Clements would reverse the trial court for the reasons stated in the

panel majority opinion.

It is ordered that the trial court allow counsel for the appellant a total fee of $925 for services

rendered the appellant on this appeal, in addition to counsel's costs and necessary direct out-of-pocket

expenses.

The Commonwealth shall recover of the appellant the amount paid court-appointed counsel to represent him in this proceeding, counsel's costs and necessary direct out-of-pocket expenses, and the fees and costs to be assessed by the clerk of this Court and the clerk of the trial court.

This order shall be certified to the trial court.

Costs due the Commonwealth by
  appellant in Court of Appeals of Virginia:

Attorney's fee             $925.00    plus costs and expenses

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-2-

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **21st** *day of* **February, 2006**.

Malcolm Parker, Appellant,

against          Record No. 1592-04-4
                     Circuit Court No. CR105025

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before The Full Court

On January 24, 2006 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on January 10, 2006, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on January 10, 2006 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of the

appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:   Chief Judge Fitzpatrick, Judge Benton and Retired Judge Bumgardner[*]
Argued at Richmond, Virginia


MALCOLM PARKER

                                                    MEMORANDUM OPINION[**] BY
v.        Record No. 1592-04-4                      JUDGE JAMES W. BENTON, JR.
                                                         JANUARY 10, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

James G. Connell, III (Devine & Connell, P.L.C., on brief), for
appellant.

Susan L. Parrish, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


The jury convicted Malcolm Parker of obtaining money by false pretenses in violation of

Code § 18.2-178.  Parker contends the evidence failed to prove money was exchanged in reliance

on a false statement of present or past fact.  We agree and reverse the conviction.

I.

On appeal, we review the evidence "in the light most favorable to the Commonwealth,"

as the prevailing party below, giving "it all reasonable inferences fairly deducible therefrom."

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  So viewed,

the evidence proved that on March 23, 2003 Detective Needels negotiated to buy ecstasy, a

controlled amphetamine, from Brittany Seiler, Malcolm Parker's romantic friend.  The detective

_____

[*] Judge Bumgardner participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2005.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and Seiler agreed he would give Seiler $2,350 in exchange for 150 pills of ecstasy on April 1, 2003.

Later, Parker and Seiler went into a nutritional supplement retail store and spoke with Stephanie Colson, an acquaintance and employee of the store. Parker told Colson he needed pills in white tablet form. When Colson asked why, he told her, "I'm going to sell 200 E pills to someone and I don't have all of them." Colson told him they did not have pills of that type. A week later, when Colson visited Parker at his house, Parker told her he had gotten the pills. Parker and Seiler told Colson their plan to sell "fake" pills by putting four ecstasy pills with the "fake" ones.

On April 1, Parker drove Seiler to a parking lot to meet with the detective. Seiler entered the detective's car and nervously took an orange pill bottle out of her purse. She handed it to the detective and said, "[T]hese are the pills." The detective gave her $2,350 and opened the bottle. Sensing that "the smell, the texture and the shape" of the pills were "inconsistent with other [ecstasy] pills" he had purchased in the past, the detective asked Seiler if she was "sure these [were] real." Seiler responded, "[Y]eah, they're real" or "I'm pretty sure they're real." When the prosecutor asked the detective why he gave Seiler the money if the pills looked different from ecstasy, he responded, "I had given the money . . . she handed me the pills and I handed her the money and . . . on past experience with her I haven't had a problem." The detective also explained that he did not retrieve the money "[b]ecause she was out of the car . . . very quickly."

After test results indicated the pills were not any type of controlled substance, the detective obtained arrest warrants for Parker and Seiler. Following the presentation of this evidence at trial, the trial judge granted Parker's motion to strike the evidence concerning distribution of an imitation controlled substance and denied his motion to strike the evidence on

the charge of obtaining money by false pretenses.  The jury convicted Parker of obtaining money by false pretenses.

## II.

Parker contends the Commonwealth did not prove a false representation of any existing or past fact when the money was obtained, a necessary element of the crime of obtaining money by false pretenses.  The Commonwealth responds that "[t]he false pretense was the defendant's plan all along to substitute fake pills for the real ones."

In pertinent part, Code § 18.2-178 provides that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of larceny thereof."  Therefore, the Commonwealth must prove four elements to support a conviction of obtaining money by false pretenses:  (1) the defendant had the intent to defraud, (2) the fraud occurred, (3) the defendant used false pretenses to perpetrate the fraud, and (4) those false pretenses induced the owner to part with the property.  Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1997).  At issue in this case is the fourth element, whether false pretenses induced the detective to part with the money.

The Commonwealth contends that "[t]he fact that the exchange of money for the pills was simultaneous, and [Seiler] assured [the detective] that the pills were real after he gave her the money, is of no consequence."  It argues that the fourth element of the test is satisfied in this case because "the defendant's plan all along [was] to substitute fake pills for real ones."  It points to Parker's earlier statements that he intended "to cover fake pills with four real ones."

The statutory phrase, "false pretense," means a "representation as to any existing fact or past event."  Id. at 518, 237 S.E.2d at 808.  The principle is well established that "[f]alse representations amounting to mere promises or statements of intention have reference to future

events and are not criminal within the statute, even though they induce the party defrauded to part with his property." Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959). "[M]erely showing that the accused [at some time] knowingly stated what was false is not sufficient . . . ." Riegert, 218 Va. at 518, 237 S.E.2d at 808 (reversing the conviction due to insufficient evidence to prove that the defendant had the requisite intent to defraud when the act occurred). "[S]tatements of intention relating to future events" are not representations of existing or past facts, and thus not statements of false pretenses. Watson v. Commonwealth, 4 Va. App. 450, 452, 358 S.E.2d 735, 736 (1987). The statements Seiler and Parker made to Colson about their plan were made prior to the actual exchange. As statements of intention concerning future events, those statements were not statements of false pretenses. See id.

Parker made no representations to the detective. Parker was convicted of aiding or abetting Seiler, who made only one statement before the exchange that could *potentially* qualify as statements of false pretenses. When Seiler first got into the detective's car she said "these are the pills." The statement that "these are the pills" was literally true. The plain meaning of "these are the pills" was not false because the bottle indisputably contained pills. Thus, this statement was not a false "representation as to [an] existing fact or past event." Riegert, 218 Va. at 518, 237 S.E.2d at 808. The other statement Seiler made is irrelevant to our analysis because it occurred after the transaction took place. A representation made after the exchange could not have induced the detective to give her the money, and inducement is part of the fourth element of the offense.

We conclude, therefore, that the evidence was insufficient to support the jury's verdict. The evidence failed, as a matter of law, to establish the elements of the offense. We hold,

therefore, that the trial judge erred by denying Parker's motion to strike the evidence.

Accordingly, we reverse the conviction.

Reversed.

Fitzpatrick, C.J., dissenting.

I respectfully dissent, and for the following reasons, I would hold that the trial court did not err and affirm appellant's conviction.

Appellant contends that Detective Needels did not rely on Seiler's false statement as the basis to part with his property. He argues that the false pretense was limited only to Seiler's statement that the pills were real in response to Detective Needels' questioning. I disagree with appellant that the false pretense was limited to a single statement, and rather determine that, viewing the transaction under the totality of the circumstances, Detective Needels relied on the false statements.

The Commonwealth must prove four elements to obtain a conviction of obtaining money by false pretenses: "(a) that the accused intended to defraud; (b) that a fraud actually occurred; (c) that the accused used false pretenses to perpetrate the fraud; and (d) that the false pretenses induced the owner to part with his property." Wynne v. Commonwealth, 18 Va. App. 459, 460, 445 S.E.2d 160, 161 (1994). See also Quidley v. Commonwealth, 221 Va. 963, 965, 275 S.E.2d 622, 624 (1981) (describing the fourth element as "accomplishment of the fraud by means of the false pretenses used for that purpose"). I agree that the only element that the parties dispute on appeal is whether the false pretenses induced Detective Needels to pay $2,350 to Seiler.

Whether the false pretenses induced the detective to part with his property depends upon what statements or conduct comprise the false pretenses. What constitutes a false pretense is a question of law, and we review "*de novo* the trial court's application of defined legal standards to the particular facts of a case." Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475-76 (1997).

A false pretense must be "a representation as to any existing fact or past event." Reigert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 808 (1977). "False representations

- 6 -

amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property." Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959).

The actions of appellant cannot be viewed in a vacuum but include the totality of the circumstances of the exchange. Seiler spoke with Detective Needels and agreed to sell him ecstasy at a particular place and time. This meeting was orchestrated by appellant. Both parties arrived at the specified place and time, and Seiler entered Detective Needels' vehicle with a bottle of pills. When Seiler entered the vehicle, she said "these are the pills" and at some point in the exchange she reassured Detective Needels that the pills were ecstasy. Although Detective Needels thought that there might be some non-ecstasy pills in the container, it was his experience that real drugs were often mixed in with fake drugs. While Seiler's agreement to sell the ecstasy, standing alone may not have been sufficient to establish the requisite elements, her additional conduct both before and after the statements does so.

In determining whether the false pretenses induced the detective to part with his property, the Supreme Court of Virginia has put forth this test: "whether the false pretense, either operating alone or *with other causes*, had a controlling influence, or that without such pretense the owner would not have parted with his goods." Trogdon v. Commonwealth, 72 Va. (31 Gratt.) 862, 884-85, 885 (1878) (emphasis added) (noting that such a question is "peculiarly one for the jury"). However, the victim need only rely to some degree on the false pretense in order to satisfy the fourth prong, and the pretense need not have been the only inducement. Fay v. Commonwealth, 69 Va. (28 Gratt.) 912, 916 (1877); Swinson v. Commonwealth, 16 Va. App. 923, 925-26, 434 S.E.2d 348, 349 (1993).

Whether the detective relied on the false pretenses in parting with his money is a question of fact, and so we must view the evidence in the light most favorable to the Commonwealth.

- 7 -

Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999). In addition, a conviction will be affirmed "unless it is plainly wrong or without evidence to support it." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001).

Detective Needels thought that the pills might not be ecstasy, but he testified that "there was no way to test 150 pills. I've purchased drugs in the past where there will be a number of fake items . . . so there's actually fake stuff in there with real stuff. So my understanding was, looking at the pills, yeah, some of these look fake, but there possibly could be real ones in there."

Viewed in the light most favorable to the Commonwealth, Detective Needels thought that he was paying $2,350 for ecstasy, and although the pills that he viewed appeared not to be ecstasy, it was possible that there were ecstasy pills in the bottle that he could not see. As a result, he was induced to part with his money by false pretenses. Thus, I would affirm the judgment of the trial court.